UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| FRANZ SCHLEICHER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GARY C. WENDT, WILLIAM J. SHEA, CHARLES H. CHOKEL, and JAMES S. ADAMS, <br><br> Defendants. | Misc. Case No. 08-55 RHK/SRN <br><br> S.D. Ind. Case No. <br> 1:02-CV-1332-DFH-TAB <br><br> Hearing Date: April 29, 2010 <br> Hearing Time: 1:30 p.m. |

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD BY NON-PARTY GREEN TREE SERVICING, LLC ON THE GROUNDS OF PRIVILEGE AND WORK PRODUCT**

_____

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF RELEVANT FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    APPLICABLE LEGAL STANDARDS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.      GTS is Not Entitled to Assert Conseco or CFC's Attorney-Client Privilege
                or Work Product Protection.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.      GTS's Privilege Logs Fail to Provide Sufficient Information to Invoke
                Either the Attorney-Client Privilege or Work Product Protection.  . . . . . . . 8

        3.      The Documents Listed in the Privilege Logs Appear to Relate to Business
                or Personal Matters, Not Legal Advice or Preparation for Litigation.  . . . 10

        4.      Many Documents Are Not Work Product  . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*American International v. NWI-I,*
    240 F.R.D. 401 (N.D. Ill, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Citibank, N.A. v. Andros,*
    666 F.2d 1192 (8th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Commodity Futures Trading Comm'n v. Weintraub,*
    471 U.S. 343 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Diversified Indus., Inc. v. Meredith,*
    572 F.2d 596 (8th Cir. 1977); on rehearing,
    572 F.2d 606 (8th Cir. 1978) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10, 12

*Fed. Deposit Ins. Corp. v. Amundson,*
    682 F. Supp. 981(D. Minn. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-7

*Hickman v. Taylor,*
    329 U.S. 495; 67 S.Ct. 385
    91 L.Ed. 451 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hollins v. Powell,*
    773 F.2d 191 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*In re ANR Advance Transp. Co., Inc.,*
    302 B.R. 607 (E.D. Wis. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Grand Jury Subpoena Duces Tecum,*
    112 F.3d 910 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 12

*In re Malone,*
    655 F.2d 882 (8th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*McCook Metals L.L.C. v. Alcoa Inc.,*
    192 F.R.D. 242 (N.D. Ill. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rabushka ex rel. United States v. Crane Co.,*

122 F. 3d 559 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Simon v. G.D. Searle & Co.*,
    816 F.2d 397 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Triple Five of Minnesota, Inc. v. Simon*,
    212 F.R.D. 523 (D. Minn. 2002); aff'd,
    2002 WL 1303025 (D. Minn. June 6, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Zenith Electronics Corp. v. WH-TV Broad. Corp.*,
    2003 WL 21911066 (N.D. Ill. Aug. 7, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Statutes & Rules**                                                      **Page(s)**

Federal Rules of Civil Procedure
    Rule 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rules of Civil Procedure
    Rule 26(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

Federal Rules of Civil Procedure
    Rule 26(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

**Other Authorities**

8 C. Wright & A. Miller,
    Federal Practice and Procedure §20249 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . 12

8 Wigmore, *Evidence*
    2292 McNaughton (rev. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I.    **INTRODUCTION**

By the instant motion, Plaintiffs seek an order compelling Green Tree Services ("GTS") to produce thousands of documents GTS has withheld based upon the assertion of work product protection and attorney-client privilege. These documents were not originally created by GTS but rather were created by pre-bankruptcy Conseco Inc. ("Conseco") and Conseco Finance Corporation ("CFC"). In accordance with an Order of the Court presiding over CFC's bankruptcy, and by its own admissions in this proceeding, GTS did not acquire a substantial majority of CFC or Conseco, and is not a successor in interest to either entity. Accordingly, GTS did not succeed to their privileges. Rather, as set forth herein, any potential privilege or protection belonging to Conseco or CFC was extinguished with their bankruptcy and division.

Even assuming some privilege or protection applied, the entries in GTS's privilege logs are insufficiently detailed to allow Plaintiffs or the Court to determine if the withheld documents were at any time associated with the seeking of legal advice or prepared in anticipation of litigation, essential predicates to the assertion of privilege or work product protection. On the contrary, a number of documents appear to be operational documents expressing concerns about the improper loss mitigation practices that are at the heart of Plaintiffs' Complaint. *See* "Plaintiffs' Second Amended and Consolidated Class Action Complaint," ("SAC") No. 02 CV 1332 DFH-TAB (S.D. Indiana 2005), Exhibit B to Declaration of Peter A. Binkow in Support of Plaintiffs' Motion to Compel the Production of Documents Responsive to Plaintiffs' Subpoena to Third Party Green Tree Servicing LLC.,

1

filed with this Court on October 15, 2008, 117-135.  Accordingly, the Court should order GTS to produce all of the documents it has withheld.[1]

## II.    STATEMENT OF RELEVANT FACTS

In December 2002, Conseco, and its largest subsidiary, CFC, each filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court").   Several months prior to that time, in August 2002, Plaintiffs commenced a putative class action against Conseco and certain of its former officers and directors alleging that they had made misrepresentations concerning CFC's financial results. A majority of Plaintiffs' allegations relate directly to CFC's manufactured home lending and servicing business.

In March 2003, the Bankruptcy Court approved the sale of a portion of CFC's assets to CFN Investments LLC ("CFN").  *See* Order dated March 14, 2003 from *In re Conseco, Inc., et al.*, ("CFN Bankr. Order"), No. 02 B 49672, Exhibit A to the Declaration of Peter A. Binkow ("Binkow Decl.") filed herewith.  The CFN purchase included CFC's manufactured housing loan origination and servicing, home improvement loan servicing, and home equity loan servicing businesses.

CFC's private label credit card business, by contrast, was sold to General Electric

---

[1]In addition to those documents identified on privilege logs addressed herein, GTS has further asserted that it has withheld more documents, without yet providing a privilege log. For the reasons set forth herein, the Court should order production of these documents as well.  In the alternative, the Court should allow Plaintiffs to seek further relief as necessary with respect to such documents even following the impending discovery cutoff in this matter.

Consumer Finance. *See* Order dated March 14, 2003 from *In re Conseco, Inc., et al.*, No. 02 B 49672, Ex. B to the Binkow Decl. The remaining businesses of CFC were shut down prior to the bankruptcy, or liquidated as part of the bankruptcy and sold to entities unrelated to CFN. *See* Ex. C 5 to the Binkow Decl. (Affidavit of David Schwartz ("Schwartz Aff.") filed with the Court on November 10, 2008).

CFN, which currently operates under the name Green Tree Servicing LLC ("GTS"), is not an extension of CFC. The bankruptcy Court order approving CFN's purchase of CFC assets unequivocally provides that neither CFN nor any of its affiliates, which include GTS, are a "successor" or "continuation" of the former CFC or any CFC enterprises. *See* Ex. A to the Binkow Decl. p. 14 (CFN Bankruptcy Order).

In February 2008, Plaintiffs subpoenaed CFC and Conseco documents in GTS's possession. After GTS failed to comply with the subpoena, Plaintiffs commenced these proceedings by filing a Motion to Compel Production on October 15, 2008. GTS filed an Opposition to the Motion ("GTS Opp. Memo") on November 10, 2008. Therein, GTS repeatedly disavowed being a continuation of the former CFC, stating, *inter alia*: "CFN did not acquire a 'substantial majority' of the assets of the former CFC" (emphasis in original); the business conducted by GTS "has been far narrower than that of the former CFC and its affiliates;" and GTS "does not involve numerous businesses of the former CFC and its affiliates, such as originating or servicing of aircraft loans, credit cards, truck/bus financing, commercial loans, or inventory financing." *See* Ex. D to the Binkow Decl. p. 7 (GTS Opp. Memo). In sum, GTS maintained, "[n]either CFN nor its affiliates, one of which is GTS, are

a 'successor' to or 'continuation' of CFC, Conseco, Inc., or any other Conseco entity." *Id.*

Following further proceedings, and due to the substantial burden of reviewing all data stored by GTS for privilege (100,000 boxes of hard copy and 20,000 backup tapes containing Electronically Stored Information ("ESI")), the Court found it practicable not to require GTS to conduct a privilege review prior to release to the parties. Instead, the Court entered a protective order allowing both parties to undertake an initial review while GTS simultaneously began its privilege review. *See* Exhs. F and G to the Binkow Decl. (2/3/09 Prot. Order and 7/8/09 Am. Prot. Order). GTS indicated it would run keyword searches as an initial privilege review of the data that was ultimately chosen for processing, and the resulting data set was segregated and set up on a separate database for GTS review.[2] GTS was ordered to produce any documents for which it did not claim a privilege, and provide a privilege log for any documents withheld. *See* Ex. G p. 7. to the Binkow Decl.

GTS subsequently began a privilege review, and produced privilege logs to Plaintiffs on March 4, 2009, December 18, 2009, January 20, 2010, and February 3, 2010, which are the subject of the present motion. *See* Exhs. H-K to the Binkow Decl. (March 4, 2009 Privilege Log, December 18, 2009 Privilege Log, January 20, 2010 Privilege Log, and February 3, 2010 Privilege Log respectively). Pointedly, GTS is not itself conducting the

---

[2]The searches run were: "attorney-client;" "attorney" within 2 words of "client;" "attorney" within 5 words of "privileged;" and "work" within two words of "product." The tapes were further searched in the folder entitled "LEGAL" and within the folder entitled "USERS" the folders beginning with the first 5 letters of the last name of legal department personnel was searched.

privilege review of CFC documents in its possession.  Counsel for defendants are reviewing the records, thereby further highlighting GTS's inability to properly claim privilege over them.

## III.    APPLICABLE LEGAL STANDARDS

A party is allowed to conduct discovery on "any matter, not privileged, that is relevant to the claims or defense of any party." Fed. R. Civ. P. 26(b)(1).  Courts construe relevancy broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.  *See Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947).

The attorney-client privilege provides a narrow exception to the rule of broad access to discovery.  *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 (8th Cir. 1997). The attorney-client privilege applies to corporations as well as individuals.  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  However, privilege is extinguished in bankruptcy in the corporate context when no effort is made to reconstitute or run the prior entity.  *See, e.g., Fed. Deposit Ins. Corp. v. Amundson*, 682 F. Supp. 981, 987 (D. Minn. 1988) ("Amundson").

The privilege applies only to documents that seek or provide legal advice, and is not applicable to documents prepared in the regular course of business.  *See Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987).  The party claiming the attorney-client privilege or the work product doctrine bears the burden to provide a factual basis for such assertions. *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985).  That burden may be met when the

party produces a detailed privilege log stating a valid basis of the claimed privilege for each document in question. *Rabushka ex rel. United States v. Crane Co.*, 122 F. 3d 559, 565 (8th Cir. 1997).

Finally, the work product doctrine will not protect documents from discovery unless they were prepared in anticipation of litigation. Fed.R.Civ.P. 26(b)(3); *see In re Grand Jury Subpoena*, 784 F.2d 857, 862 (8th Cir. 1986). There is no work product immunity for documents prepared in the regular course of business. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977), on rehearing, 572 F.2d 606 (8th Cir. 1978) (en banc).

## IV.  ARGUMENT

**1.  GTS is Not Entitled to Assert Conseco or CFC's Attorney-Client Privilege or Work Product Protection.**

GTS's acquisition of certain of CFC's assets did not cause GTS to be a successor to Conseco or CFC's attorney-client privilege and work product protection because it did not assume control over either company's operations. Accordingly, GTS cannot properly withhold any documents based on a claim of attorney-client privilege or work product protection that may have once applied to Conseco or CFC.[3]

---

[3]During the parties' meet and confer efforts GTS asserted that the parties' various agreements concerning the timing of GTS's assertion of privilege somehow resulted in a waiver of Plaintiffs' right to argue that GTS never obtained CFC's privileges. However, none of the parties' agreements have addressed the issue, either explicitly or impliedly. On the contrary, Plaintiffs have at all times throughout this proceeding challenged GTS's ability to assert any of Conseco or CFC's privileges. *See* Plaintiffs' Memorandum Re: Third Party Green Tree Servicing LLC's Claimed Entitlement to Fees and Costs of a Privilege Review,

Following a corporate bankruptcy, the actor whose duties most closely resemble those of corporate management succeeds to the corporation's attorney-client privilege (*i.e.*, the privilege follows the incidents of control of the corporation). *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353 (1985). In *Weintraub*, the Supreme Court determined that the bankruptcy trustee holds the right to waive or assert the attorney-client privilege, because the trustee "plays the role most closely analogous to that of a solvent corporation's management." *Id.*; *see also*, *Citibank, N.A. v. Andros*, 666 F.2d 1192, 1195 (8th Cir. 1981) (corporation's attorney-client privilege vested exclusively in bankruptcy trustee; officers of bankrupt corporation had no right to assert or waive the privilege).

The privilege passes similarly in the case of a corporate takeover or merger (*i.e.*, following the incidents of control), to wit, the management of a new corporation assumes the authority to assert or waive the old company's attorney-client privilege. *Weintraub*, 471 U.S. at 349. However, the privilege passes in this manner only when the assuming company takes over all or substantially all of the divested company's assets and operations, and is, in fact, a successor-in-interest to the company. *See, e.g., Amundson*, 682 F. Supp. at 987. In cases where the former company is broken up - where there is "no effort to reconstitute the entity or run it . . . there is only an effort to sift the ashes, selling off what is valuable" - the old company is considered to be "dead" and the right to assert privilege on behalf of that

---

filed with this Court on February 2, 2009, Ex. E to the Binkow Decl. at ps. 3-8. Any assertion of waiver must be conclusively demonstrated by GTS, as it is the party seeking to claim privilege. *Hollins v. Powell,* 773 F.2d 191, 196 (8th Cir. 1985). GTS cannot meet this burden.

company is extinguished. *Id.* Thus, the mere transfer of some assets from one corporation to another is not sufficient to transfer the attorney-client privilege. *Zenith Electronics Corp. v. WH-TV Broad. Corp.*, No. 01 C 4366, 2003 WL 21911066, *1 (N.D. Ill. Aug. 7, 2003). The privilege is not allocated based on the division of the old company's assets, and does not pass to even the named successor entity absent a transfer of control. *American International v. NWI-I*, 240 F.R.D. 401 (N.D. Ill, 2007) ("this Court finds that the attorney-client privilege does not pass to a successor entity, even with respect to the assets that were transferred to that successor").

In *Amundson*, as in the present case, the entity taking over in bankruptcy had no intention of running the former company wholesale, but rather split it into pieces and discontinued some sectors. 682 F. Supp. 981, 987. As such, the court in *Amundson* determined that the privilege died with the old company, just as the privilege here died with the dissolution of Conseco and CFC. Similarly, in *American Intl.*, where the predecessor company emerged from bankruptcy divided into six, the court held that the attorney-client and work product privileges could not be divided based on the assets each new company held, despite a contractual agreement to the contrary. *Id.* at 403-404. The Court held that the privilege would only follow control over the substantially all of the old company's business operations and assets; gaining control over a portion or division of the assets or operations was not sufficient for privileges to be transferred.

In this case, CFN's purchase of some of CFC's assets in bankruptcy did not make GTS the successor in interest of CFC or Conseco. The Bankruptcy Court made explicitly clear

8

that neither CFN nor any of its affiliates, which include GTS, are a "successor" or "continuation" of the former CFC or any CFC enterprises. *See* Ex. A p. 14 to the Binkow Decl. (CFN Bankr. Order). As GTS explained in its opposition to Plaintiffs' November 15, 2008 motion to compel, "CFN did not acquire a 'substantial majority' of the assets of the former CFC." (emphasis in original) *See* Ex. D p. 7 to the Binkow Decl. (GTS Opp. Mem). The business conducted by GTS, it asserted, "has been far narrower than that of the former CFC and its affiliates." *Id.* GTS "does not involve numerous businesses of the former CFC and its affiliates, such as originating or servicing of aircraft loans, credit cards, truck/bus financing, commercial loans, or inventory financing." *Id.* In sum, GTS maintained, "[n]either CFN nor its affiliates, one of which is GTS, are a 'successor' to or 'continuation' of CFC, Conseco, Inc., or any other Conseco entity." *Id.*

These admissions are dispositive. GTS is not a successor to either Conseco or CFC, and GTS may not assert any privilege once held by either entity.[4]

**2.      GTS's Privilege Logs Fail to Provide Sufficient Information to Invoke Either the Attorney-Client Privilege or Work Product Protection.**

Even assuming that GTS had acquired some or all of Conseco or CFC's privileges or protections, due to its failure to supply a legally sufficient privilege log, GTS has failed to

_____

[4]Similarly, GTS may not assert any claim of work product once held by Old Conseco or CFC. Courts have applied *Weintraub* to the work product doctrine, and concluded that any rights under the work product doctrine are transferred in the same manner as the attorney-client privilege. *See, e.g., In re ANR Advance Transp. Co., Inc.,* 302 B.R. 607 (E.D. Wis. 2003). It follows that any work product protection that may have existed did not survive Conseco's bankruptcy, and cannot be asserted by GTS.

properly invoke them.

Rule 26(b)(5) requires a party withholding information or documents on a claim of privilege to "make the claim expressly" and "describe the nature of the documents, communications, or things not disclosed in a manner, that without revealing information itself privileged and protected will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). This burden is met when the withholding party produces a privilege log which, for each document withheld, describes: (1) the type of document, (2) the date of creation, (3) the author, (4) the recipient, (5) the subject matter, and (6) the applicable privilege. *Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 528 (D. Minn. 2002) aff'd, CIV.99-1894 PAM/JGL, 2002 WL 1303025 (D. Minn. June 6, 2002).

The privilege logs provided by GTS fall well short of these requirements. As noted below in detail, (and demonstrated in the chart attached as Exhibit M to the Binkow Declaration), the descriptions provided for thousands of documents withheld on the December 18, 2009, privilege log are insufficient and do not allow for the proper assessment of privilege.[5]

The log contains over 2,300 entries where the subject matter was not adequately described in the comments section. For example, the description of the document identified

_____

[5]All data and examples referenced above refer to the GTS privilege log provided to Plaintiffs on December 18, 2009. The same inadequacies, however, are endemic of *all* privilege logs provided. Tables outlining Plaintiffs' analysis of the deficiencies of the logs provided on March 4, 2009, January 20, 2010 and February 3, 2010 are attached as Exhibits L, N, and O to the Binkow Decl.

as GTS_ESI-0048268 - "Correspondence seeking information on employees" - is blatantly insufficient.   While it is plausible that information on employees could, under some circumstances, relate to legal advice, it could also relate to any array of business issues relevant to this case.   Similarly, the document identified as GTS_ESI-0050442 is described as "Internal email to Corey Requesting information" and the subject line of the email reads: "Re: Conseco Finance Corp. and Conseco Finance Servicing Corp."   This description contains insufficient information upon which to base an assertion of privilege, and in fact seems to indicate that this communication was related to business/operational matters of CFC, rather than legal advice (discussed further below).   The description for the document identified as GTS_ESI-050224 - "Internal email exchange with Corey regarding personnel matter" - again is an insufficient basis upon which to assert the privilege and rather infers a business-related communication.

In addition to vagueness of many descriptions, the author was not identified in over 2,000 entries, and a recipient was not identified in more than 4,500.   In some of these entries, there are discrepancies between the author/recipient(s) identified in the To/From columns and the names entered in the comments section of the log.   Many entries contain only email addresses, and do not identify the name of the senders and receivers.   Without knowing the names and/or capacities of all senders and receivers, Plaintiffs are unable to determine if any purported privilege was waived by dissemination to parties outside the scope of confidence. In addition, more than 1,000 entries were not dated, as required by Rule 26(b)(5).   Finally, the privilege log fails to specify the type of privilege asserted for four of the documents

11

withheld.

It follows that GTS has waived any privilege(s) that it failed to adequately assert in the produced privilege logs, and these documents should be released to Plaintiffs immediately.

3.    **The Documents Listed in the Privilege Logs Appear to Relate to Business or Personal Matters, Not Legal Advice or Preparation for Litigation.**

GTS claims of privilege are further flawed, as many entries appear to clearly relate to business, rather than legal, matters, and in no way constitute legal advice.

Within the context of an attorney-client relationship, only confidential communications relating to legal advice are privileged. *See, e.g., Diversified Indus., Inc.*, 572 F.2d 596, 609 (8th Cir. 1977) (en banc).  Documents that contain no request for legal advice, nor give legal advice, fall outside the scope of the privilege. *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 253 (N.D. Ill. 2000).[6]  Ordinary business and financial records of corporations which would not have been privileged in the hands of the client do not obtain the privilege mere due to their delivery to an attorney. *See In re Malone*, 655 F.2d 882, 8896 (8th Cir. 1981) (finding no attorney-client privilege existed for ordinary business records including partnership agreements, articles of incorporation, corporate minute books, bank records, real estate transactions, deeds, tax returns, and other similar papers).

---

[6] 8 Wigmore, *Evidence* § 2292 McNaughton (rev. 1961) (emphasis omitted) states: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

The descriptions provided in GTS's privilege log suggest that hundreds of documents withheld pertain to business matters unrelated to legal advice.  For example, one log entry reads: "Email from Cai Smith regarding meeting agenda re Extension Practices vs. Securitization Requirements date- 3/12/2002." (GTS_ESI00255925).  This email was sent exclusively to senior executives and appears to relate to a purely operational matter. Specifically, the "extension practices" presumably refer to certain loss mitigation tactics often touted by CFC in public presentations, and the "securitization requirements" seemingly refer to the terms of Conseco's pooling and servicing agreements.  Clearly, the agenda for a meeting discussing these publicly acknowledged operational practices is discoverable as information relating to the business decisions of the corporation.  Finally, GTS_ESI-0051017 and GTS_ESI-0051018 relate to "I/O Pool valuation" - clearly a business-related matter. Indeed, the valuation of an I/O (interest only) security is an operational accounting issue. Thus, to the extent in-house counsel were involved at all in correspondence relating to I/O valuations, these attorneys were clearly wearing their "business hats" at the time.  These documents are discoverable.

As the descriptions of many of the documents withheld demonstrate their business nature, GTS has improperly cloaked these documents with a privilege that is not applicable. Therefore, these documents should be produced immediately.

**4.     Many Documents Are Not Work Product**

Finally, GTS claims that 2,712 documents are protected from disclosure by the attorney work product doctrine.  The work product doctrine will not protect documents from

discovery unless they were prepared in anticipation of litigation. Fed.R.Civ.P. 26(b)(3); *see In re Grand Jury Subpoena*, 784 F.2d 857, 862 (8th Cir. 1986).  The determination of whether documents were prepared in anticipation of litigation is a factual one: courts determine whether in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation. 8 C. Wright & A. Miller, Federal Practice and Procedure §2024, at 198-99 (1970) (footnotes omitted); *see Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977), on rehearing, 572 F.2d 606 (8th Cir. 1978) (en banc).

It is clear upon review of the GTS privilege logs that a majority of documents have been improperly withheld under the guise of the attorney work product doctrine.  For example, GTS_ESI-0090020 is described as a "Memo on NY sales finance exam for 2002." It is difficult to imagine a scenario in which a memo regarding a finance exam would have been prepared in anticipation of litigation, as the description makes no reference to any legal matters whatsoever, much less upcoming litigation.  As Exhibit I to the Binkow Declaration demonstrates, this example is typical of a majority of the log entries, which clearly fail to support a claim of work product protection.  These documents were not prepared in anticipation of litigation, are not afforded work product doctrine protection, and GTS should be compelled to release these documents immediately.

## V.    CONCLUSION

GTS does not have the standing to assert attorney-client privilege or work product protection over the documents listed in the privilege logs because any privilege that may

have existed with Conseco and CFC died with their division in bankruptcy.  Even if GTS did

possess Conseco or CFC's privileges, it has lost any such potential privilege by not properly

asserting it within an adequate privilege log.  Thus, Plaintiffs respectfully request the Court

grant the instant motion to compel and Order third party GTS to produce all documents

withheld within one week of decision.  In the alternative, Plaintiffs request that the Court

grant whatever further relief necessary in view of the impending discovery cutoff.  *See* also

Note 1, *Supra*.

DATED: April 5, 2010                              GLANCY BINKOW & GOLDBERG LLP


                                                  */s/ Peter A. Binkow*
                                                  Peter A. Binkow(*pro hac vice*)
                                                  1801 Avenue of the Stars, Suite 311
                                                  Los Angeles, CA 90067
                                                  Telephone: 310-201-9150
                                                  Facsimile: 310-201-9169
                                                  Email: info@glancylaw.com

                                                  *Counsel for Plaintiffs*